UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH PARKS,

                                        Plaintiff,

                                                          9:08-CV-0586
v.                                                        (TJM/GHL)

JOSEPH T. SMITH, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JOSEPH PARKS, 96-A-4387
Plaintiff *pro se*
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

HON. ANDREW M. CUOMO                            AARON M. BALDWIN, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Joseph Parks alleges that Defendants violated his constitutional rights by sentencing him

to 15 days of keeplock as punishment for attempting to mail a photograph of himself in a

meditation pose.  Currently pending before the Court is Defendants' motion for judgment on the

pleadings pursuant to Federal Rules of Civil Procedure 12(c).  (Dkt. No. 20.)  For the reasons that

follow, I recommend that Defendants' motion be denied as to Plaintiff's First Amendment free

exercise/Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") claim and

granted as to Plaintiff's other claims.

I.      **BACKGROUND**

        Plaintiff's complaint (Dkt. No. 1) alleges that:

        Plaintiff, an inmate at Shawangunk Correctional Facility who is a practicing Jehovah's

Witness, mailed a picture of himself with his hands in a meditation pose to a company for use in

a personal ad.  (Dkt. No. 1 (Facts Section) at ¶¶ 1-8.)  The next day, Defendant K. Skwera, a

guard at the facility, issued a misbehavior report charging Plaintiff with violating facility rules

against soliciting goods or services, unauthorized organization, and failing to comply with

correspondence procedures.  (Dkt. No. 1 (Facts Section) at ¶¶ 6, 9.)  Defendant Skwera alleged

that the meditation pose was actually a gang sign.  (Dkt. No. 1 (Facts Section) at ¶ 9.)

        At his disciplinary hearing, Plaintiff testified that he was a practicing Jehovah's Witness,

that the pose in the photograph was consistent with his religious beliefs, and that he was not a

gang member.  He also argued that the misbehavior report was defective because it had not been

signed by Defendant Senior Counselor Louis Franco, that there was no evidence that he was a

gang member, that Defendants assumed that he was a gang member based solely on his race, and

that he was being denied the free exercise of his religion.  (Dkt. No. 1 (Facts Section) at ¶ 11.)

        Plaintiff called Defendants Skwera and Franco as witnesses.  (Dkt. No. 1 (Facts Section)

at ¶ 12.)  Defendant Skwera testified that she did not speak to anyone other than Defendant

Franco about the pose in the photograph.  She was not able to explain how the pose was a gang

2

sign.  (Dkt. No. 1 (Facts Section) at ¶¶ 13-14.)  Defendant Franco, who has been trained by DOCS to identify unauthorized gang signs,  testified that the pose in the photograph was "what appeared to be a heart ... or perhaps a triangle ... or maybe even a diamond.  That is pretty much regarded as a symbol of the Bloods."  (Dkt. No. 1 (Facts Section) at ¶ 15(a-b).)  Defendant Franco admitted that there was no facility index of gang signs and that he was not familiar with the religious hand signs shown to him at the hearing.  (Dkt. No. 1 (Facts Section) at ¶ 15(c-d).)

Plaintiff alleges that Defendant Lt. G. Gardner, the hearing officer, "created a hostile environment, using intimidation tactics of taunting and facial gestures."  (Dkt. No. 1 (Facts Section) at ¶ 16.)

Defendant Gardner found Plaintiff not guilty of the charges of soliciting goods or services and failing to comply with correspondence procedures, but guilty of the unauthorized organization charge.  (Dkt. No. 1 (Facts Section) at ¶ 17.)  Gardner based his guilty finding on the misbehavior report, Plaintiff's testimony that the hand sign was a form of meditation, Defendant Skwera's testimony, the testimony of Defendant Franco "verifying the hand sign as that of an unauthorized organization known as the Bloods", and his own inspection of the photograph.  (Dkt. No. 1 (Facts Section) at ¶ 18(a-e).)  He sentenced Plaintiff to 15 days of keeplock with loss of commissary and phone privileges and 30 days' loss of package privileges. (Dkt. No. 1 (Facts Section) at ¶ 17.)  He did so to "impress upon the inmate that unauthorized organization[s] and display of their hand signs are prohibited."  (Dkt. No. 1 (Facts Section) at ¶ 18(f).)

Plaintiff appealed Defendant Gardner's disposition to Defendant Joseph T. Smith, the superintendent of the facility.  (Dkt. No. 1 (Facts Section) at ¶ 19.)  Smith affirmed the

3

disposition via his designee, defendant John Maly, the Deputy Superintendent of Security.  (Dkt. No. 1 (Facts Section) at ¶ 20.)

On March 12, 2007, Plaintiff filed a grievance with Defendant J. Krom, the facility's inmate grievance supervisor, alleging that Defendant Gardner was biased, had deprived Plaintiff of due process, and had deprived Plaintiff of the free exercise of his religion.  Plaintiff also alleged that Defendant Smith allowed "a pattern of unchecked, unconstitutional conduct to take place at the hearings ... due to an unwritten Shawangunk policy promoting, encouraging and/or condoning such."  (Dkt. No 1 (Facts Section) at ¶ 21.)  When Krom did not reply within three weeks, Plaintiff filed an appeal of his grievance with Defendants Smith.  (Dkt. No. 1 (Facts Section) at ¶ 22.)  When Plaintiff did not receive a reply within four weeks, he appealed to Defendant Thomas G. Eagen, the facility's inmate grievance director.  (Dkt. No. 1 (Facts Section) at ¶ 23.)  Plaintiff did not receive a response.  (Dkt. No. 1 (Facts Section) at ¶ 24.)

Plaintiff alleges that "[d]ue to defendant Smith allowing a practice that discriminates against me, due to my race and/or religion, I have been force[d] to modify my religious practices."  (Dkt. No. 1 (Facts Section) at ¶ 25.)

Plaintiff has asserted eight causes of action: (1) a First Amendment free exercise claim or, in the alternative, a claim under the RLUIPA; (2) a claim that Defendants "retaliated against Plaintiff due to him exercising his right to express his religious views"; (3) a claim under the Equal Protection Clause, claiming that Defendants deprived "Plaintiff[] of free exercise of religion while allowing other religious groups free exercise of religion"; (4) a First Amendment freedom of expression claim; (5) a claim that Defendants violated the Due Process Clause by "refusing to provide [Plainitff] with a tier hearing consistent with his constitutionally protected

4

rights"; (6) a claim that Defendants violated the Due Process Clause by failing to respond to his grievance; (7) a claim of racial discrimination; and (8) a claim that Defendants conspired to violate his constitutional rights.  (Dkt. No. 1(Causes of Action) 1-8.)

Plaintiff requests $1,000.00 for each day he was deprived of his right to practice his religion, the reversal of his disciplinary sentence, and costs.  (Dkt. No. 1(Prayer for Relief).)

Defendants answered the complaint on August 27, 2008.  (Dkt. No. 17.)  They now move for judgment on the pleadings.  (Dkt. No. 20.)  Plaintiff has opposed the motion.  (Dkt. No. 23.) Defendants have filed a reply.  (Dkt. No. 26.)

## II.   LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

Defendants, who have answered the complaint, move for judgment on the pleadings. "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[1] or (2) a challenge to the legal cognizability of the

---

[1]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed

claim.[2]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[3]  The main purpose of this rule is to "facilitate a proper decision on the

---

to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[2]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[3]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."[4]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[5]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)).  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

---

[4]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[5]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[6]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[7]  In other words,  while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[8]  Moreover, "courts

---

[6]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[7]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[8]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

they suggest."[9]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[10]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[11]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[12]

---

[9]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

[10]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and
citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").

[11]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[12]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted];  *see, e.g., See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[13] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[14]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[15]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal

_____

Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

    [13]    *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

    [14]    *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691 [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

    [15]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural

rules of pleading are not absolutely suspended."[16]

## III.    ANALYSIS

### A.    First Amendment Free Exercise/RLUIPA Claim

Plaintiff's first cause of action alleges that Defendants violated his rights under the First Amendment and RLUIPA to freely exercise his religion.  (Dkt. No. 1 at ¶ 7(1).)  Defendants move for judgment on the pleadings dismissing this claim.  Defendants argue that Plaintiff has not sufficiently pleaded that his sincerely held religious beliefs were substantially burdened.  In the alternative, Defendants argue that they are entitled to qualified immunity.  I find that Defendants are not entitled to judgment on the pleadings dismissing this claim.

### 1.    Sufficiency of the Complaint

Prisoners retain some measure of the constitutional right to the free exercise of religion guaranteed by the First Amendment.  *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, due to the unique concerns of the prison setting, prisoners' free exercise rights must be balanced against the interests of prison officials engaged in the complex duties of administering the penal system.  *Id*.  Thus, a prison regulation or individualized decision to deny a prisoner the ability to engage in a religious exercise "is judged under a reasonableness test less restrictive than that ordinarily applied [to burdens on fundamental rights]: a regulation that burdens a [prisoner's] protected right passes constitutional muster if it is reasonably related to legitimate

---

and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[16]    *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (punctuation omitted).

To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens[17] his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (citing *Ford*, 352 F.3d at 591). A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature[18]. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)(punctuation omitted)(holding that Rastafarian prisoner's sincerely held religious belief that he was prohibited from submitting to a test for latent tuberculosis was "substantially burdened" where he was forced to choose between "submitting to the test or adhering to [his] beliefs and enduring medical keeplock.").

Once a plaintiff establishes that a sincerely held religious belief has been substantially

---

[17]     Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test. "The *Ford* court noted that the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims. Nevertheless, the *Ford* court held that since the plaintiff had not challenged the application of the substantial burden requirement, the court would proceed as if the requirement applied. Likewise, the *Salahuddin* court noted that '[r]esolution of this appeal does not require us to address Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement,' because defendants 'never proceed to argue that we should find any particular burdened religious practice to be peripheral or tangential to [plaintiff's] religion.' The court then proceeded as if the substantial burden requirement applied." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 n.10 (S.D.N.Y. 2008)(citations and some punctuation omitted).

[18]     However, in some cases "an asserted belief might be so bizarre, so clearly nonreligious in motivation, so as not to be entitled to protection." *Frazee v. Illinois Dept. Of Employment Security*, 489 U.S. 829, 834 n.2 (1989).

burdened,"[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational."  *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).  Although the defendants' burden is "relatively limited," the legitimate penological interest advanced must have been the *actual* reason for the defendants' actions.  "Post hoc justifications with no record support will not suffice."  *Salahuddin*, 467 F.3d at 276-77.  When determining whether the burden imposed by the defendants is reasonable rather than irrational, a court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate governmental objective; (2) whether the prisoner has an alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating the plaintiff's exercise of the right that have only a *de minimis* adverse effect on valid penological interests.  *Salahuddin*, 467 F.3d at 274-75.

Similarly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a) [emphasis added].

Here, Plaintiff has met his threshold showing.  The face of the complaint sufficiently pleads that Plaintiff holds a subjective, sincere belief that meditative hand poses, such as the one for which he received a disciplinary sentence, are a component of his faith as a Jehovah's Witness.  An attachment to the complaint shows that he testified at length about this belief at his

13

disciplinary hearing.  (Dkt. No. 1, Ex. 2 at 13.)  The face of the complaint also sufficiently pleads

that Plaintiff's sincerely held religious belief was substantially burdened by his disciplinary

sentence.  Plaintiff was found guilty of violating Rule 105.12[19] for making the hand gesture.  The

complaint plausibly suggests that after being found guilty of making a gang sign for striking a

meditation pose, Plaintiff was put on notice not to engage in his prayer practices in the future.  In

fact, the hearing officer explicitly stated that one of his motivations for finding Plaintiff guilty of

the disciplinary charge was "to impress upon the inmate that ... displays of the hand signs are

prohibited."  (Dkt. No. 1, Ex. 2 at 15.)  The face of the complaint thus plausibly suggests that

Plaintiff was put under "substantial pressure ... to modify his behavior and to violate his beliefs."

Defendants argue that Plaintiff has failed to state a free exercise or RLUIPA claim

because the complaint contains no "plausible suggestion that the prohibition of mailing a

personal ad to an adult entertainment company implicated any sincerely held religious belief" and

that Plaintiff's rights were not "substantially burdened" because "Plaintiff was simply not

allowed to mail a personal ad to, in his own wor[d]s, 'find someone special.'" (Dkt. No. 20-2 at

15-17.)  Defendants misstate the gravamen of Plaintiff's complaint by characterizing the

religious belief at issue as the right to mail a letter to a personal ad company rather than the right

to strike meditation poses.  Defendants' characterization would be more apt if Plaintiff had been

found guilty of violating facility correspondence procedures and was disputing that

---

[19]     Rule 105.12, which has since been repealed, stated that inmates "shall not engage
or encourage others to engage in unauthorized organizational activities or meetings, display,
wear, possess, distribute, or use unauthorized organizational insignia or materials."   N.Y. Comp.
Codes. R. & Regs. tit. 7, § 270.2(B)(6)(iii) (2004).

determination[20].  However, Plaintiff was found *not guilty* of the correspondence procedure charge and challenges only the finding that he violated Rule 105.12 by using a gang sign.

Having found that the face of the complaint plausibly suggests that Plaintiff has met his threshold burden, I must determine whether Defendants have, at this point in the litigation,  met their relatively limited burden of identifying a legitimate penological interest for Plaintiff's disciplinary sentence.  Although several possible legitimate interests suggest themselves, *Defendants do not argue that they had a legitimate penological reason for their actions*[21].  Rather, the portions of their memorandum of law and reply brief discussing Plaintiff's free exercise claim focus entirely on the argument that Plaintiff has not met his burden of demonstrating that his sincerely held religious belief was substantially burdened.  As discussed above, Defendants' argument on that point is without merit.  Therefore, I find that Defendants have not met their burden at this point in the litigation and recommend that the Court deny Defendants' motion for judgment on the pleadings dismissing Plaintiff's free exercise/RLUIPA claim.

2.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity.  (Dkt. No. 20-2 at 23-24.)

---

[20]      In the first paragraph of the "Statement of Facts" section of Defendants' memorandum of law, Defendants state that Plaintiff received a "disciplinary conviction for unauthorized correspondence."  (Dkt. No. 20-2 at 1.)  As noted in the body of this Report-Recommendation, Plaintiff was found not guilty of the facility correspondence violation.  (Dkt. No. 1, Ex. 2 at 15.)

[21]      Because Defendants have not argued that they had *any* legitimate penological reason for their actions, they have not shown that they had a "compelling governmental interest" as required by RLUIPA.

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6)[22]

motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386

F.3d 432, 435 (2d Cir. 2004) (citation omitted).  However, the qualified immunity defense may

"be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the

face of the complaint." *McKenna*, 386 F.3d at 436.  A defendant "presenting an immunity

defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the

more stringent standard applicable to this procedural route ... [T]he motion may be granted only

where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

that would entitle him to relief." *Id*.

The qualified immunity inquiry in a prisoner civil rights case involves two issues: (1)

"whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional

violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)

(citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations

omitted).

Here, as discussed above, the facts viewed in the light most favorable to the plaintiff

establish a constitutional violation.  The Court, then, must determine whether it would have been

clear to a reasonable officer that the conduct was unlawful.  Courts in this circuit consider three

factors in making that determination:

(1) whether the right in question was defined with 'reasonable specificity';

---

[22]     As noted above, motions for judgment on the pleadings are evaluated using the
same analysis applicable to Rule 12(b)(6) motions to dismiss. *Cleveland v. Caplaw Enter.*, 448
F.3d 518, 521 (2d Cir. 2006).

(2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).[23]

"As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[24]  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).[25]

---

[23]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[24]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[25]     *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

Defendants argue that "it was objectively reasonable for them to conclude that the plaintiff's hand gesture was a punishable gang symbol as opposed to a meditative or religious pose in light of the trained opinion of Defendant Counselor Franco on this issue."  (Dkt. No. 20-2 at 23.)  However, under the stringent standard applicable at this point in the litigation, I find this argument insufficient to support a finding of qualified immunity.  *See Ford*, 352 F.3d at 598 (rejecting defendants' argument that they were entitled to qualified immunity because they received advice from DOCS religious authorities that feast had no religious significance). Therefore, I recommend that the Court deny Defendants' motion for judgment on the pleadings of Plaintiff's free exericse/RLUIPA claim.

**B.     Retaliation Claim**

Plaintiff's second cause of action states: "Defendants have retaliated against Plaintiff due to him exercising his right to express his religious views in accordance with his Jehovah's Witness Faith by unlawfully sanctioning Plaintiff for his religiosity."  (Dkt. No. 1 at ¶ 7.) Defendants move for judgment on the pleadings dismissing this claim, relying on the same arguments advanced regarding Plaintiff's free exercise claim.  This cause of action is duplicative of Plaintiff's free exercise claim, and I therefore recommend that it be dismissed.

**C.     Equal Protection Claim**

Plaintiff's third cause of action states that Defendants denied Plaintiff the free exercise of his religion "while allowing other religious groups free exercise of religion."  (Dkt. No. 1 at ¶ 7.) Defendants move for judgment on the pleadings dismissing this claim.

The Equal Protection Clause requires the government to treat all similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1989).  Specifically, the

Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir.1980)).  Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are insufficient to plead a valid equal protection claim. *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008).

Here, Plaintiff's complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than he was.  Rather, Plaintiff merely makes the conclusory allegation that "other religious groups" were allowed free exercise.  Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's third cause of action. I recommend, however, that the Court grant Plaintiff leave to amend, in light of the fact that Plaintiff's opposition to the motion for judgment on the pleadings states that "Defendants ... admit that they allow Rastafarians to make religious poses [such] as the one plaintiff exhibited." (Dkt. No 23-2 at 7.)

### D.      First Amendment Freedom of Expression Claim

Plaintiff's fourth cause of action states that "Defendants have deprived Plaintiff of freedom of expression in accordance [with] the First Amendment of the United States Constitution."  (Dkt. No. 1 at 12.)  Defendants move for judgment on the pleadings dismissing this cause of action, relying on the same arguments advanced regarding Plaintiff's free exercise claim.  This cause of action is duplicative of Plaintiff's free exercise claim, and I therefore

recommend that it be dismissed.

**E.   Due Process Claim Regarding Conduct of Disciplinary Hearing**

Plaintiff claims that Defendants deprived him of his right to due process by "refusing to provide him with a tier hearing consistent with his constitutionally protected rights[26]."  (Dkt. No. 1 at 12.)  In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Defendants move for judgment on the pleadings dismissing this claim on the grounds that (1) the 15-day keeplock sentence did not deprive Plaintiff of any constitutionally-protected liberty interest; and (2) even if Plaintiff was deprived of a liberty interest, he received all of the process that was due.  (Dkt. No. 20-2 at 6-11.)  Defendants are correct.

1.   Liberty Interest

Defendants argue that Plaintiff has not alleged facts plausibly suggesting that he was deprived of a liberty interest because the complaint does not allege that Plaintiff endured any atypical conditions during his 15-day keeplock sentence.  (Dkt. No. 20-2 at 6-8.)  Defendants are correct.

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical

---

[26]     Plaintiff also alleges that Defendant Smith  allowed "a pattern of unchecked, unconstitutional conduct to take place at the hearings ... due to an unwritten Shawangunk policy promoting, encouraging and/or condoning such."  (Dkt. No 1 (Facts Section) at ¶ 21.)  However, the complaint does not allege any facts plausibly suggesting such a pattern.

20

and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).  Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU [or keeplock]." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004).  The issue, then, is whether Plaintiff's confinement in keeplock imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer*, 364 F.3d at 64. Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions[27]." *Palmer*, 364 F.3d at 65.  For confinements of an "intermediate duration - between 101 and 305 days - development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64-65. Disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer*, 364 F.3d at 65 (quoting *Colon v. Howard*, 215 F.3d 227,  231 (2d Cir. 2000)).

---

[27]        "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week.  *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

District courts in the Second Circuit are split on whether a prisoner can state a procedural due process cause of action when he alleges that he served less than 101 days in disciplinary confinement but does not allege conditions more severe than normal SHU conditions.   Compare *Gonzalez-Cifuentes v. Torres*, No. 9:04-cv-1470 GLS/DRH, 2007 WL 499620, at * 3 (N.D.N.Y. Feb. 13, 2007)("The Second Circuit has held that at least where the period of confinement exceeded thirty days, refined fact-finding is required to resolve defendants' claims under *Sandin*. No such fact-finding can occur ... on a motion to dismiss")  and *Smart v. Goord*, 441 F. Supp. 2d 631, 641 (S.D.N.Y. 2006)("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F. Supp. 2d 350 (S.D.N.Y. 2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93-day SHU confinement failed to "elevate his confinement to the level of deprivation required under *Sandin)*; *Sales v. Barizone*, No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec. 2, 2004)(granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz*, No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11, 2002) ("No such additional egregious circumstances are pled here.  Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement. Nor has [plaintiff] responded to the defendants' motion in order to provide further detail. Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards*,

22

No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66-day] confinement."). The Second Circuit has never addressed this issue directly[28].

The undersigned agrees with the *Alvarado, Sales*, *Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in disciplinary confinement alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions. The undersigned adopts this view for two reasons. First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level. Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative. Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases suggests that dismissal is the better course. In its cases, the Second Circuit

---

[28]    While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days. *Colon*, 215 F.3d at 232; *Palmer,* 364 F.3d at 64-65. Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU conditions. For example, in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), the plaintiff was confined to a super-restrictive housing unit for six months. He sued, arguing in part that his procedural due process rights were violated. The defendants moved to dismiss. The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest. The defendants brought an interlocutory appeal. The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six months fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe." *Iqbal*, 490 F.3d at 163 (emphasis added).

has focused on the *content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-line rule that a determination of whether conditions were "atypical and significant" cannot be resolved on a Rule 12(b)(6) motion.  For example, in *Ortiz*, the district court granted the defendants' motion to dismiss a case in which a prisoner complained of a 90-day SHU confinement.  The Second Circuit reversed, not because the *Sandin* issue can never be decided at the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in SHU far inferior to those prevailing in the prison in general*."  *Ortiz*, 380 F.3d at 655 (emphasis added).

Here, the complaint does not include allegations at all about the conditions of Plaintiff's 15-day keeplock confinement, much less allegations that the conditions were atypical.  Thus, the complaint does not plausibly suggest that Plaintiff was deprived of a liberty interest.  Accordingly, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's due process cause of action regarding his disciplinary hearing[29].

2.   Due Process

Defendants argue that, even if Plaintiff has alleged that he was deprived of a constitutionally-protected liberty interest as a result of the disciplinary hearing, the face of the complaint shows that he received all of the process that was due.  (Dkt. No. 20-2 at 8-11.)  Defendants are correct.

---

[29]Plaintiff's opposition to the motion for judgment on the pleadings alleges that he was subjected to second-hand smoke and denied food while in keeplock.  (Dkt. No. 23 at ¶ 3.)  Ordinarily, I would recommend Plaintiff leave to amend to add these allegations to his complaint. However, as discussed below, the face of the complaint shows that Plaintiff received all of the process due.  Therefore, I do not recommend granting leave to amend.

Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense. *Id*. at 570.

Here, the face of the complaint (including the exhibits thereto) shows that due process was met. Regarding the first two factors, Plaintiff received advanced written notice of the charges against him when "[o]n 2/28/07, approximately 9:05 p.m., I received a misbehavior report charging me with DOCS rule violations 103.20 (solicit goods or services), 105.12 (unauthorized organization), and 180.11 (comply with correspondence procedure)." (Dkt. No. 1 (Facts) at ¶ 6, Ex. 1.) Plaintiff was allowed to call witnesses and present evidence at the disciplinary hearing. (Dkt. No. 1, Ex. 2.)

Regarding the third and fourth factors, although the complaint states that Defendant Gardner "created a hostile environment, using intimidation tactics of taunting and facial gestures toward me" (Dkt. No. 1 (Facts) at ¶ 16), this allegation does not rise to the level of unconstitutional lack of fairness or impartiality. It is well settled "that the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally."

*Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y.2002) (citing *Francis v.. Coughlin*, 891

F.2d 43, 46 (2d Cir.1989)).  Due process in this context requires only that the hearing officer's

decision not be "arbitrary."  *Wolff*, 418 U.S. at 571.  A decision is not "arbitrary" if it is supported

by "some evidence."  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "This standard is

extremely tolerant and is satisfied 'if there is *any* evidence in the record that supports' the

disciplinary ruling."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (emphasis in original)

(quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  Here, Defendant Gardner's

decision was supported by the testimony of Defendant Franco that Plaintiff had used a gang sign.

Defendant Gardner provided Plaintiff with a written statement of the disposition, including the

evidence relied upon and the reasons for the disciplinary actions taken.  (Dkt. No. 1, Ex. 6.)

Finally, Plaintiff has not alleged that he was denied assistance in preparing for the

hearing.  Even if he had been denied such assistance, nothing in the complaint plausibly suggests

that plaintiff is illiterate or that the complexity of the issue made it unlikely that plaintiff would

be able to collect and present the evidence necessary for an adequate comprehension of the case.

Thus, plaintiff was not entitled to assistance in preparing his defense.

Because the face of the complaint does not plausibly suggest that Plaintiff was denied due

process, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's due

process claim even if it finds that Plaintiff's 15-day keeplock sentence implicated a

constitutionally protected liberty interest.

### F.    Due Process Claim Regarding Grievance

Plaintiff's sixth cause of action alleges that Defendants violated his right to due process

by refusing to hear his grievance regarding the disciplinary sentence.  (Dkt. No. 1 at 12.)

26

Defendants argue that the claim should be dismissed because there is no constitutional right to the grievance process. (Dkt. No. 20-2 at 11-12.) Defendants are correct.

"[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) (citations and punctuation omitted). Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's sixth cause of action.

### G.    Racial Discrimination Claim

Plaintiff's seventh cause of action alleges that Defendants racially discriminated against him. (Dkt. No. 1 at 12.) Defendants argue that the cause of action should be dismissed because Plaintiff has not alleged facts plausibly suggesting that Defendants were motivated by racial animus. (Dkt. No. 20-2 at 18-19.) Defendants are correct.

I construe Plaintiff's racial discrimination claim, like his religious discrimination claim, as alleging that Defendants violated his rights under the Equal Protection Clause. As discussed above, conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are insufficient to plead a valid equal protection claim. *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008). As with his religious discrimination claim, Plaintiff has not alleged that any similarly situated inmates were treated any differently than he was. Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's seventh

27

cause of action.

### H.     Conspiracy Claim

Plaintiff's eighth cause of action alleges that Defendants conspired to violate his constitutional rights.  (Dkt. No. 1 at 12.)  Defendants argue that the claim should be dismissed because Plaintiff has not met the heightened pleading requirement for conspiracy claims. Defendants are correct.

Plaintiff has not stated a conspiracy claim under either 42 U.S.C. § 1985(3) or 42 U.S.C. § 1983.  Any claim under 42 U.S.C. § 1985(3) fails for the same reason that Plaintiff's equal protection claims fail: a conspiracy claim under that section requires the plaintiff to prove that the conspiracy was "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).  As discussed above, the complaint does not plausibly suggest any such motivation.

Any conspiracy claim under § 1983 fails because Plaintiff's allegations are too conclusory.  In order to survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff "must allege (1) an agreement; (2) to act in concert to inflict an unconstitutional injury;  and (3) an overt act done in furtherance of that goal causing damages ... [C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's Eighth Cause of Action.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 20) be **GRANTED IN PART AND DENIED IN PART**.  I recommend that Defendants' motion be **DENIED** as to Plaintiff's first cause of action regarding alleged violations of Plaintiff's First Amendment free exercise/RLUIPA rights.  I recommend that Defendants' motion be **GRANTED WITH LEAVE TO AMEND** as to Plaintiff's third cause of action for alleged equal protection violations regarding disparate treatment of other religious groups and the eighth cause of action for conspiracy.  I recommend that Defendants' motion be **GRANTED WITHOUT LEAVE TO AMEND** as to Plaintiff's second cause of action for retaliation, the fourth cause of action for alleged violations of Plaintiff's right to free expression, the fifth cause of action for alleged due process violations regarding Plaintiff's disciplinary hearing, the sixth cause of action for alleged due process violations regarding Plaintiff's grievance, and the seventh cause of action for alleged racial discrimination.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 17, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge